UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

PENNY ABERG,

          Plaintiff,

      v.                                        Case No. 15-CV-571

CHARTER COMMUNICATIONS, INC.
WELFARE BENEFIT PLAN, and
LIBERTY LIFE ASSURANCE
COMPANY OF BOSTON,

          Defendants.

## DECISION AND ORDER

### INTRODUCTION

Contrary to popular belief, when you fall off a horse, it's not always a good idea to get back on. Plaintiff Penny Aberg hurt her back when she fell off of a horse, twice. She commenced this action against Charter Communications, Inc. Welfare Benefit Plan and Liberty Life Assurance Company of Boston alleging violations of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*, seeking long term disability benefits allegedly due under an employee benefit plan governed by ERISA. Aberg has moved for summary judgment, as have the defendants. All parties have

consented to the jurisdiction of this court. Briefing is complete and the motions are ready for resolution.

## FACTS

### A. The Parties

Charter Communications, Inc. ("Charter") employed plaintiff Penny Aberg from September 6, 2011, until April 4, 2014. (ECF No. 18, ¶¶ 9, 12.) Defendant Charter Communications, Inc. Welfare Benefit Plan (the "Plan") is an employee benefit plan subject to ERISA. (ECF No. 18, ¶ 2.) Defendant Liberty Life Assurance Company of Boston ("Liberty") is an insurance company licensed to do business in Wisconsin. (ECF No. 18, ¶ 3.) Liberty issued a group disability insurance policy to Charter as part of the Plan. (ECF No. 18, ¶ 15.)

### B. Aberg's Position

Aberg's position at Charter was Customer Care Billing Advisor, which is a sedentary position. According to Aberg's job description, the position requires responding "accurately, promptly, and effectively to call center calls," "quickly resolv[ing] customer concerns" and "proactively sell[ing] Charter products and services." The position also requires the ability to perform the job at a workstation for prolonged periods of time, using a headset. (ECF No. 18, ¶ 11.)

C.  **The Plan and Its Terms**

Aberg was a participant in the Plan, which provided Long-Term Disability Insurance ("LTDI") among other benefits. (ECF No. 18, ¶ 16.) Liberty is responsible for paying any benefits due under the Plan. (ECF No. 18, ¶ 17.) Liberty has "the discretionary authority to construe the terms of [the Plan] and to determine benefit eligibility" under the Plan. (ECF No. 18, ¶ 18.)

Under the Plan, "[w]hen Liberty receives Proof that a Covered Person is Disabled due to Injury or Sickness and requires the Regular Attendance of a Physician, Liberty will pay the Covered Person a Monthly Benefit…." (ECF No. 18, ¶ 19.) In the first 24 months of disability, "Disabled" means that a Plan participant is "unable to perform the Material and Substantial Duties of his Own Occupation" due to sickness or injury. (ECF No. 18, ¶ 21.) After 24 months, the Plan considers a participant disabled if he or she is unable to perform the Material and Substantial Duties of *any occupation*, *i.e.*, an occupation for which she is or becomes "reasonably fitted." (ECF No. 18, ¶¶ 21, 29.) "Material and Substantial Duties" are defined as "responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified." (ECF No. 18, ¶ 25.)

The Policy limits the benefits for non-verifiable symptoms "to not exceed a combined period of 12 months of Monthly Benefit payments while the Covered Person is insured under this Policy." (ECF No. 28 at 13.) "Non-Verifiable Symptoms" "means

3

the Covered Person's subjective complaints to a Physician which cannot be diagnosed using tests, procedures or clinical examinations typically accepted in the practice of medicine. Such symptoms may include, but are not limited to, dizziness, fatigue, headache, loss of energy, numbness, pain, ringing in the ear, and stiffness." (ECF No. 18, ¶ 28.)

**D.     Medical Conditions**

Aberg primarily suffers from back pain stemming from two horseback riding accidents. She has been diagnosed with the following medical conditions related to her back: thoracic spondylosis, thoracic facet syndrome and facet disease, chronic thoracic lumbar back pain, a compression fracture of T11, change in geometry of back post kyphoplasty, persistent myofascial pain, fibromyalgia, and lumbar radiculopathy. (ECF No. 33, ¶ 1.)

Aberg's first horse accident occurred in September 2012. (ECF No. 33, ¶ 4.) The next day Aberg visited physiatrist and rehabilitation specialist Dr. Elizabeth Bensen. (ECF No. 33, ¶ 4.) Dr. Bensen noted acute pain, bruising, and tenderness in Aberg's lower back. (ECF No. 33, ¶ 4.) In October 2012 Dr. Bensen permitted Aberg to return to work for a trial period whereby she would work full-time for a few days followed by a few days off work. (ECF No. 33, ¶ 5.) Later that month Dr. Bensen reviewed MRI results of Aberg's lower back and concluded that it showed a T11 compression fracture and degenerative disc disease. (ECF No. 33, ¶ 6.) Dr. Bensen further noted that Aberg's

ongoing back pain had kept her off work for six weeks. (ECF No. 33, ¶ 6.) In September, October, and November 2012, Dr. Bensen indicated that Aberg was "totally incapacitated at this time." (ECF No. 33, ¶ 33.) In December 2012 Dr. Bensen noted that Aberg still complained of not being able to "sit or stand for any length of time, such that she can return to work in her position at Charter." (ECF No. 33, ¶ 7.) Aberg remained off work the rest of the year. (ECF No. 33, ¶ 7.)

Treatment notes from January 2013 indicate that Aberg returned to work at Charter, although she did suffer from "somewhat increased back pain [after] prolonged sitting[.]"(ECF No. 33, ¶ 8.) Dr. Bensen permitted Aberg to return to work for "up to 8 hours per day as tolerated." (ECF No. 33, ¶ 34.) In February 2013 Dr. Bensen noted that Aberg had unsuccessfully attempted to increase her work hours[.]" (ECF No. 33, ¶ 9.) Dr. Bensen recommended that Aberg work a maximum of four to six hours per day due to Aberg's impaired sitting tolerance. (ECF No. 33, ¶ 35.)

Dr. Bensen referred Aberg to Dr. Robert Mann, a neurosurgeon, to discuss a vertebroplasty. (ECF No. 33, ¶ 6.) Aberg underwent a vertebroplasty in April 2013. (ECF No. 33, ¶ 10.) About eight days after the vertebroplasty, Aberg again met with Dr. Bensen. (ECF No. 33, ¶ 11.) Dr. Bensen noted that Aberg was experiencing "some improvement in symptoms" but said she may "not get complete resolution of symptoms given [the] longstanding nature of them." (ECF No. 33, ¶ 11.)

In August 2013 Aberg began physical therapy. (ECF No. 33, ¶ 12.) According to the treatment notes from her physical therapist, Amy McFadden, Aberg experienced some improvement after a kyphoplasty at T11. (ECF No. 33, ¶ 12.) However Aberg's prognosis for rehabilitation was "somewhat guarded"; McFadden set a goal for Aberg to be able to assume a neutral spine position while sitting at least ten minutes. (ECF No. 33, ¶ 13.)

In late October 2013 Aberg was thrown off a horse a second time. (ECF No. 33, ¶ 14.) Her spinal x-rays showed "mild residual wedging of the T11 vertebral body" as well as "minimal degenerative changes in the remainder of the lumbar spine" and "degenerative changes of mild degree" in the cervical spine. (ECF No. 33, ¶ 14.) Aberg tried to return to work on November 8, 2013, but her symptoms were extremely painful. (ECF No. 33, ¶ 15.) McFadden noted that the second horseback riding accident "significant[ly] exacerbate[ed]" her back and left hip symptoms. (ECF No. 33, ¶ 15.) According to both McFadden's and Dr. Bensen's treatment notes from January 2014, Aberg complained that she had difficulty tolerating remaining seated at work. (ECF No. 33, ¶¶ 17-18.) Dr. Bensen restricted Aberg to working four to eight hours per day, as she could tolerate. (ECF No. 33, ¶ 37.)

In February 2014 Aberg reported that she worked full eight-hour shifts for the past three days and that her pain was a "4" out of 10. (ECF No. 28, ¶ 12.) In March 2014 Dr. Bensen permitted Aberg to "work  max 4-6 hours as tolerated per day." (ECF No.

28, ¶ 14.) Dr. Bensen also required that Aberg "must have a break every 2 hours 15 minutes." (ECF No. 28, ¶ 14.) Later that month McFadden observed that Aberg's persistent back pain was significant enough that she had to leave work and cancel physical therapy because of the pain. (ECF No. 33, ¶ 22.)

On April 7, 2014, Dr. Bensen concluded that Aberg was totally incapacitated until at least the following month, at which point Dr. Bensen would re-evaluate her. (ECF No. 17-4 at 94.) A week later, Aberg underwent thoracic facet joint injections and experienced a "100% decrease in pain." (ECF No. 28, ¶ 16.) In May 2014 Aberg complained that she could not sit for any length of time and that modified duty was "really not possible" at Charter. (ECF No. 33, ¶ 25.) On May 9, 2014, Dr. Bensen opined that she did "not frankly think [Aberg wa]s chronically long-term disabled; however, she may be disabled from her position at Charter….I do not think she is permanently disabled." (ECF No. 28, ¶ 17.) On May 23, 2014, Dr. Bensen concluded that Aberg's job "exacerbate[d her] chronic condition" and that Aberg was "totally incapacitated" due to her thoracic and lower back conditions. (ECF No. 33, ¶ 38.) In July 2014 Dr. Bensen noted that she believed that Aberg was "completely disabled at this point as she cannot sit or stand for any length of time. This would be until she gets treatment for her back condition." (ECF No. 28, ¶ 19.) She further opined that Aberg had "no ability to [return to work] given marked pain." (ECF No. 33, ¶ 39.)

Also in July 2014 McFadden set several physical therapy goals for Aberg. (ECF No. 33, ¶ 29.) One short-term goal was for Aberg to have pain at no greater than six out of ten when sitting up to forty-five minutes and standing for greater than ten minutes without numbness on the right foot. (ECF No. 33, ¶ 29.) The long-term goals included Aberg demonstrating seventy-five percent of normal range of motion in her back, which would allow Aberg to reach when dressing and bathing without increased pain, and reporting pain no greater than four out of ten to allow her to sit for up to one hour comfortably. (ECF No. 33, ¶ 29.) On separate occasions in July 2014 Aberg reported that she went camping and that she sat on bleachers at a fair, although doing so caused her to be sore. (ECF No. 28, ¶¶ 20-21.)

According to the most recent medical records in January 8, 2015, Aberg claimed that, although she was "trying through vocational rehab to retrain for a different type of job," she currently could not perform any sedentary work. (ECF No. 28, ¶ 22.) Pain management specialist Dr. John Choi also noted that Aberg was unable to stand for more than thirty minutes and sit for more than thirty minutes to an hour. (ECF No. 17-1 at 96.) He further noted that the temporary relief Aberg experienced from radiofrequency ablation "seem to be wearing off for now." (ECF No. 17-1 at 96.)

### E. Denial of LTDI Benefits

Aberg filed her claim for disability benefits on April 10, 2014. (ECF No. 18, ¶ 14.) By letter dated May 16, 2014, Liberty approved Aberg's claim for short-term disability

insurance benefits ("STDI") "based on [her] inability to perform the duties of [her] job." (ECF No. 18, ¶ 32.) Liberty paid Aberg STDI benefits through the maximum duration for which she was eligible to receive such benefits, *i.e.*, from April 15, 2014, through October 3, 2014. (ECF No. 18, ¶ 33.)

By letter dated November 13, 2014, Liberty notified Aberg that it approved her claim for LTDI benefits. (ECF No. 18, ¶ 34.) Liberty determined that, "[b]ased on the medical and vocational information contained in [its] claim file," Aberg was "unable to perform the material and substantial duties of her own occupation." (ECF No. 18, ¶ 34.) However, Liberty advised Aberg that it would continue to review her claim and that approval as of November 13, 2014, did not guarantee payments through the maximum benefit duration. (ECF No. 18, ¶ 35.)

Liberty subsequently contracted with Dr. Eddie Sassoon to review and issue a medical opinion concerning Aberg's medical records. Dr. Sassoon spoke with Dr. Choi, reviewed Aberg's medical records, and then on December 4, 2014, issued a report of his finding. (ECF No. 28, ¶¶ 30-31.) According to the report, Dr. Choi told Dr. Sassoon that Aberg "should avoid moderate to heavy lifting"; nothing in the report indicates that Dr. Choi recommended that Aberg should avoid sitting and standing for extended periods of time. (ECF No. 17-1 at 116.) Dr. Sassoon diagnosed Aberg with "status post vertebroplasty, suffered from facet mediated pain at T11-12, as well as chronic low back and thoracic pain…." (ECF No. 28, ¶ 31.) Dr. Sassoon opined that Aberg was limited in,

9

among other matters, "[l]ifting, carrying, pushing, and pulling limited to up to 20 pounds occasionally and 10 pounds frequently. [Aberg] would be able to sit up to eight hours in an eight hour day. Walking and standing limited to up to four hours each in an eight hour work day." (ECF No. 28, ¶ 31.)

Liberty also consulted with Lori Ashworth, a certified rehabilitation counselor and certified vocational rehabilitation provider. Her role was to complete "an occupational analysis in order to identify the material and substantial duties of [Aberg's] occupation as it is normally performed…." (ECF No. 17-1 at 87.) She determined that Aberg's occupation could be performed at both sedentary and light physical demand levels. (ECF No. 17-1 at 87.) A sedentary level requires "constant sitting," and a light physical demand level requires "sitting most of the time." (ECF No. 17-1 at 88.)

By letter dated December 23, 2014, Liberty informed Aberg that it had determined that her LTDI benefits were not payable beyond December 23, 2014. (ECF No. 18, ¶ 38.) Liberty explained that she could request a review of this determination. (ECF No. 18, ¶ 38.) If she sought review, Aberg was asked to include "[o]ffice visit notes, diagnostic testing results, and procedure reports that would indicate your symptoms are of a severity that would prevent you from performing the material and substantial duties of your own occupation," and include "[a]ctivity restrictions from

your treating providers that would prevent you from performing your occupational requirements." (ECF No. 18, ¶ 38.)

On January 14, 2015, Aberg appealed Liberty's termination of her LTDI benefits. (ECF No. 18, ¶ 39.) She included with her appeal the most recent office visit notes and work restrictions from her treating provider, Dr. Choi. (ECF No. 18, ¶ 39.) Dr. Choi's notes stated that (1) "The patient's pain level is at a 2 to 4 out of 10 with an Oswestry [Disability] Index of 48%"[1]; (2) "The patient is unable to stand for more than ½ hour and unable to sit anywhere for more than ½ hour to an hour"; (3) "The patient will need to have frequent changes in position, especially standing up from sitting position and in moving about"; and (4) "As far as the patient is concerned right now, she is unable to do any sedentary work. She will need to have frequent changes in position." (ECF No. 18, ¶ 39.)

On January 26, 2015, Liberty's nurse case manager, Joyce Lewis, reviewed Dr. Sassoon's opinion along with Dr. Choi's latest treatment record. (ECF No. 33, ¶ 55.) Lewis concluded that "[t]he file and information received on appeal is not supportive of a significant change in [Aberg's] condition since 12/23/2014 to support any change of opinion [from Dr. Sassoon's] peer review." (ECF No. 33, ¶ 57.) Liberty did not obtain an

---

[1] The Oswestry Disability Index is an index used by physicians to quantify disability for low back pain. *See Clark v. Cuna Mut. Long Term Disability Plan*, No. 14-CV-412-WMC, 2016 WL 1060344, at *3 n.3 (W.D. Wis. Mar. 15, 2016). A score between 41 and 60 constitutes a severe disability. *Id.*

independent medical examination of Aberg, although the Plan permitted it to do so. (ECF No. 33, ¶ 58.)

By its five-page letter dated February 26, 2015, Liberty informed Aberg that it reaffirmed its previous denial of benefits, finding that Aberg was not precluded from performing her occupation after December 23, 2014. (ECF No. 18, ¶ 40.) Aberg commenced this lawsuit on May 12, 2015, asserting that the defendants wrongfully denied her LTDI benefits beyond December 23, 2014. (ECF No. 1.)

## STANDARDS

### A. Summary Judgment Standard

The parties have filed cross motions for summary judgment. (ECF Nos. 19, 23.) "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it "might affect the outcome of the suit" and a dispute is "genuine" only if a reasonable finder of fact could accept the non-moving party's position and return a verdict in its favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). In resolving a motion for summary judgment, the court is to "construe all evidence and draw all reasonable inferences from that evidence in" favor of the non-movant. *E.Y. v. United States*, 758 F.3d 861, 863 (7th Cir. 2014) (citing *Gil v. Reed*, 535 F.3d 551, 556 (7th Cir. 2008)); *Del Raso v. United States*, 244 F.3d 567, 570 (7th Cir. 2001). The "court may not make credibility determinations, weigh the evidence, or

12
Case 2:15-cv-00571-WED   Filed 08/23/16   Page 12 of 20   Document 38

decide which inferences to draw from the facts; these are jobs for a factfinder." *Washington v. Haupert*, 481 F.3d 543, 550 (7th Cir. 2007) (quoting *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003)). "To survive summary judgment, the nonmovant must produce sufficient admissible evidence, taken in the light most favorable to it, to return a jury verdict in its favor." *Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 603 (7th Cir. 2012) (quoting *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 690-91 (7th Cir. 2010)).

**B.     ERISA Standard**

The standard of judicial review in an ERISA case depends on whether the plan granted the administrator discretion to determine the eligibility for benefits or to construe the plan's terms. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). When the administrator is granted such discretion, which the parties agree that it does here, the court determines only whether the plan administrator's decision to deny benefits was "arbitrary and capricious." *Hackett v. Xerox Corp Long-Term Disability Income Plan*, 315 F.3d 771, 773 (7th Cir. 2003). The arbitrary and capricious standard is deferential to the administrator's decision, requiring courts to uphold decisions even if they are incorrect. *Herzberger*, 205 F.3d at 329. But the standard is not a rubber stamp. *Donato v. Metro Life Ins. Co.*, 19 F.3d 375, 380 (7th Cir. 1994). The administrator must make "an informed judgment and articulate[] an explanation for it that is satisfactory in light of the relevant facts…." *Loyola Univ. of Chicago v. Humana Ins. Co.*, 996 F.2d 895, 898

(7th Cir. 1993); *see also Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456, 461 (7th Cir. 2001).

**ANALYSIS**

Aberg argues that Liberty's decision to terminate her LTDI benefits beyond December 23, 2014 was arbitrary and capricious.[2] (ECF No. 21 at 14.) She gives three reasons why that is so. First, Liberty conducted a selective review of the evidence in its favor. (ECF No. 21 at 15-19.) Second, the evidence which Liberty cited did not support the conclusion that Aberg was capable of working full-time. (ECF No. 21 at 19-25.) Third, Liberty failed to offer any reasoned explanation for rejecting Aberg's doctors' opinions and for reversing its prior decision to award LTDI benefits. (ECF No. 21 at 25-28.)

Liberty contends that it considered all of the relevant medical evidence Aberg provided and rendered a sound decision to deny her LTDI benefits. (ECF No. 32 at 15.)

As the court considers Liberty's decision to deny LTDI benefits to Aberg, two facts are not to be forgotten. First, Liberty was afforded discretion to decide whether Aberg was disabled even though it was the entity paying benefits. Courts should "remain cognizant of the conflict of interest that exists when the administrator has both

---

[2] On April 28, 2016, Aberg filed a Notice of Supplemental Authority in which she offers an additional case supporting her position, *Clark v. CUNA Mutual Long Term Disability Plan et. al*, No. 14-cv-412-wmc (W.D. Wis. Mar. 15, 2016). (ECF No. 36.) Liberty responded that the court should either disregard the case or provide an opportunity for it to respond. (ECF No. 37.) The cited case did not alter the conclusions in this opinion, and therefore no response is necessary.

the discretionary authority to determine eligibility for benefits and the obligation to pay benefits when due." *Holmstrom v. Metropolitan Life Ins. Co.*, 615 F.3d 758, 766-67 (7th Cir. 2010) (quoting *Jenkins v. Price Waterhouse Long Term Disability Plan*, 564 F.3d 856, 861 (7th Cir. 2009)); *see also Karul v. S.C. Johnson & Son Long Term Disability Plan*, 96 F. Supp. 3d 852, 871 (E.D. Wis. 2015).

Second, after reviewing all of the medical evidence relating to Aberg's claim for LTDI benefits, Liberty on November 13, 2014, concluded that Aberg was "unable to perform the material and substantial duties of her own occupation." (ECF No. 18, ¶ 34.) It is true that Liberty is not indefinitely bound to prior decisions awarding benefits. *Holmstrom*, 615 F.3d at 766 ("[T]he previous payment of benefits…does not create a presumptive burden for the plan to overcome.") (citation omitted). Nevertheless, "such inconsistencies can still 'be considered in the court's review process'…." *Boxell v. Plan for Grp. Ins. of Verizon Commc'ns, Inc.*, 51 F. Supp. 3d 759, 777 (N.D. Ind. 2014) (quoting *Holmstrom*, 615 F.3d at 767).

Notwithstanding its decision that Aberg was entitled to LTDI benefits, Liberty subsequently hired Dr. Sassoon to review the medical records and issue an opinion regarding Aberg's disability claim. Reviewing the same evidence that Liberty reviewed when it decided that Aberg was disabled, Dr. Sassoon reached the opposite conclusion. He concluded that Aberg had certain limitations, but importantly he concluded that she would be able to sit up to eight hours in an eight hour work day. Liberty adopted his

15

opinion even though it conflicted with the decision reached by Liberty just a couple of weeks before.

In concluding that Aberg would be able to sit an entire eight-hour work day, Dr. Sassoon seemingly ignored those parts of the medical records that supported Liberty's original conclusion that Aberg was disabled. For example, although Dr. Sassoon stated that Aberg's epidural steroid and facet joint injections alleviated Aberg's back pain (ECF No. 33 at 21-22), the treatment notes indicate that the Aberg's relief was short-lived (ECF No. 33 at 6-7). Similarly, Dr. Sassoon cited a physical therapy treatment note that stated that Aberg returned to work for three consecutive days in February 2014. (ECF No. 33 at 13-14.) He did not mention a treatment note from March 2014 indicating that Aberg left work and cancelled physical therapy due to her pain. (ECF No. 33 at 6-7.) Nor did Dr. Sassoon explain why Aberg's ability to work three consecutive days in February (ten months before Liberty concluded that she *was* disabled) somehow indicated in December that she was capable of sitting all day every day.

Further, in March 2014 Dr. Bensen permitted Aberg to work a maximum of four to six hours per day, but only to the extent that she could tolerate. (ECF No. 28 at 8.) In May 2014 Dr. Bensen concluded that Aberg was "totally incapacitated." (ECF No. 33 at 12.) In July 2014 Dr. Bensen noted that she believed Aberg had "no ability to [return to work] given her marked pain." ( See ECF No. 33 at 12.) Although his report indicates that Dr. Sassoon reviewed these documents, he never explained how, given Dr.

16

Case 2:15-cv-00571-WED   Filed 08/23/16   Page 16 of 20   Document 38

Bensen's opinions, he was able to conclude that Aberg could sit all day during an eight hour work day.

After Liberty denied Aberg LTDI benefits, she submitted to Liberty a January 2015 medical record from Dr. Choi stating that Aberg was unable to sit for more than thirty minutes to an hour and that, "[a]s far as the patient is concerned right now, she is unable to do any sedentary work." Liberty's nurse case manager concluded that Dr. Choi's latest treatment record did not support a conclusion different than that reached by Dr. Sassoon. To the extent Liberty concluded that Dr. Sassoon's opinion was consistent with Dr. Choi's January 2015 opinion, it did not explain how it reached that conclusion. To the extent Liberty discounted Dr. Choi's opinion, it did not provide a reasoned explanation for doing so. Employee benefit plans that deny disability benefits need to "set[] forth the specific reasons for such denial, written in a manner calculated to be understood by the participant." 29 U.S.C. § 1133. Because Liberty failed to do so, its decision was arbitrary and capricious.

## REMEDY

When a court finds that a plan administrator's decision to deny benefits was arbitrary and capricious, a court may either reinstate benefits or remand for further proceedings. *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 775 (7th Cir. 2003). "In answering this question a distinction must be noted between a case dealing with a plan administrator's initial denial of benefits and a case where the plan

administrator terminated benefits to which the administrator had previously determined the claimant was entitled." *Id.* Where the plaintiff was actually receiving disability benefits and those benefits were improperly terminated the appropriate means to restore the status quo is reinstatement of benefits that were being paid before the improper denial. *Weitzenkamp v. Unum Life Ins. Co. of Am.*, 661 F.3d 323, 333 (7th Cir. 2011); *see also Karul*, 96 F. Supp. 3d at 874. Reinstatement of benefits, retroactive to December 23, 2014, is appropriate in this case.

Liberty, however, argues that Aberg is limited to 12 months of LTDI benefits since her pain complaints meet the policy's definition of "non-verifiable symptoms." Alternatively, it argues that Aberg is limited to a maximum of 24 months of LTDI benefits because she has not established that she is disabled from "any occupation." Aberg responds that it is not the court's function to make determinations about her future eligibility for benefits.

Liberty has not yet assessed whether the "non-verifiable symptoms" limitation applies to Aberg's disability so as to limit her to 12 months of benefits. If this limitation does not apply, Liberty will need to determine whether Aberg is unable to engage in "any occupation" so as to be entitled to benefits beyond 24 months. Liberty has not yet addressed that question, either. It would be inappropriate for the court to attempt to make such a finding in the first instance.

18

Aberg also requests prejudgment interest on her award of benefits and reasonable attorney's fees and costs. ERISA permits prejudgment interest and an award of reasonable attorneys' fee to either party. *See* 29 U.S.C. § 1132(g)(1); *Bowerman v. Wal–Mart Stores, Inc.*, 226 F.3d 574, 592 (7th Cir.2000). The moving party must show "some degree of success on the merits." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010) (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983)). The court finds that Aberg has met that standard and is entitled to prejudgment interest and reasonable attorneys' fees.

The parties are directed to engage in a good faith effort to agree to the amount of retroactive benefits, prejudgment interest compounded annually, and reasonable attorney fees and costs, and to file a stipulation and proposed order by **October 24, 2016**.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment (ECF No. 19) is **granted**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 23) is **denied**.

**IT IS FURTHER ORDERED** that the parties must engage in a good faith effort to agree to the amount of retroactive benefits, prejudgment interest at the prime rate compounded annually, attorney fees and costs consistent with this Decision and Order, and to file a stipulation and proposed order by **October 24, 2016.** If the parties are

unable to reach a stipulation, they must file statements setting forth their respective positions, together with supporting documentation, no later than **November 8, 2016**. Any responses must be filed no later than **November 22, 2016**.

    Dated at Milwaukee, Wisconsin this 23rd day of August, 2016.

                                                        WILLIAM E. DUFFIN
                                                        U.S. Magistrate Judge